## CITY SAVINGS & LOAN CO., LIQUIDATION OF, In Re

Common Pleas Court, Cuyahoga Co.

Decided June 29, 1937.

Herbert S. Duffy, attorney general, of Columbus, and Kent H. Myers, special counsel, Cleveland, for superintendent.

Sidney N. Weitz, and Wm. Gordon, Cleveland, for depositors.

### OPINION

By HURD, J.

This cause comes before this court at this time upon the application of Wm. M. Kroeger, superintendent of Building & Loan Associations of Ohio, by L. J. Sulzer, special deputy superintendent of Building and Loan Associations of

Ohio, in charge of the liquidation of the City Savings & Loan Company. The applicant represents to the court that on or about the 14th day of September, 1933, the affairs, assets, property and operations of said City Savings & Loan Company of Cleveland, Ohio, were taken over by the superintendent of Building and Loan Associations of Ohio for the purposes of liquidation under the statutes of Ohio granting such authority.

The applicant further represents that he is now in receipt of an offer from the City Savings Association, an Ohio corporation, to purchase from him in bulk certain assets of the City Savings & Loan Company. The assets are described in said application as being cash and Home Owners' Loan Corporation Bonds in the aggregate sum of $500,000, 43 mortgages having a principal balance due of $119,444 and 22 parcels of real estate having an appraised value of $315,000, making a total valuation of $919,000 as set forth in said application. The applicant further represents to the court that it appears to be to the best interest of the liquidating estate and of persons directly or indirectly connected therewith that the offer be accepted.

A copy of the offer. marked Exhibit A. is attached to the application and is in manner and form as follows:

"March 25, 1937.
Honorable William H. Kroeger, Superintendent of Building and Loan Associations of the State of Ohio
Columbus, Ohio
Dear Mr. Kroeger:

On behalf of The City Savings Association of Cleveland, Ohio, an Ohio corporation, I hereby offer to purchase from you, as Superintendent of Building and Loan Associations of the State of Ohio in charge of the liquidation of The City Savings & Loan Company of Cleveland, Ohio, the following assets of said company, more particularly described in the attached schedules:

| | |
|---|---|
| Cash and HOLC Bonds | $500,000.00 |
| Mortgages | 119,000.00 |
| Real Estate | 300.000.00 |
| | $919,000.00 |

for which the new City Savings Association will issue to you its shares insured by The Federal Savings & Loan Insurance Corporation in equal amount.

It is mutually understood that you will distribute the shares of The City Savings Association so delivered to you as a dividend to the holders of Certificates of Claim of The City Savings & Loan Company, and that only sufficient assets will be transferred by you, and only sufficient shares delivered to you to enable you to pay a dividend of 30% of the deposit liability of The City Savings & Loan Company as of the date of said transfer of assets, said deposit liability being based on both proven and unproven claims in the original amount, before the payment of the 10% cash dividend heretofore disbursed.

It is further understood that any adjustment of assets to be transferred required to equal the 30% dividend shall be made in the item of cash.

Very respectfully yours,
ROB:EM"

The foregoing application, although signed individually by an agent is made on behalf of the proposed new corporation to be formed for the purpose of taking over the assets.

The court has conducted an extended hearing upon this proposal and numerous briefs of counsel have been filed, both in favor of and in opposition to the proposed application. In a consideration of this proposal we do not deem it necessary to burden the record with a statement of the history of the liquidation of the company. Suffice it to say that in 1931 the company went upon a restricted basis and thereafter in September of 1933 the superintendent took charge of the company for the purposes of liquidation and has been in charge administering its affairs ever since that date. A dividend of 10% was paid to all depositors in May, 1936, since which time no dividends have been paid. The City Savings Association mentioned in the application as the proposed purchaser of the assets above described is a new company organized by a group of stockholders of the old company. According to the tes-

timony the corporate organization has not been completed and the new corporation has no assets.

A proposal had been previously made to purchase all of the assets of the company by the group sponsoring the new company. The previous application was voluntarily withdrawn.

In a consideration of any proposal made with respect to the assets of a liquidating bank or savings and loan ██ company, the court must be guided by what is for the best interests of the depositors. Any plan which does not serve the best interests of depositors should be disapproved. If there is doubt about a plan serving the best interests of depositors it should be disapproved.

Coming now to a consideration of the application of the superintendent which is denominated application **"for authority to sell certain assets in bulk"** we find upon analyzing the offer of the new company, Marked Exhibit "A" above, that it is not in fact **"a sale of assets in bulk."** It appears to the court that it is rather a proposal that the superintendent of Building & Loan Associations deliver to the new company over $900,000 thereof in cash and Home Loan Corporation Bonds without any consideration other than that the new company will capitalize said assets and issue its shares in said new company in exchange for said assets. In other words the proposers offer to capitalize the assets and issue shares against them. It appears that according to the statement of the liquidator as of April 30, 1937, the cash on hand amounted to $418,973. It appears also that since that date additional cash has come into the hands of the superintendent so that the cash alone being considered in connection with this application amounts to almost $500,000.

We fail to see how this proposed transaction can be properly denominated "a sale" of the assets in bulk. We do not sell money, and while we sell bonds the bonds of the Home Owners' Loan Corporation are practically the same as cash, selling on the open market at prices fluctuating around par.

As above shown the proposed value of the real estate is $516,000 and the appraised value of the mortgages is $119,444. Since the date of the application something over $40,000 has been paid on the mortgages so that the mortgages passing are less than the appraised value of $100,000 while the cash has increased in the ratio that the mortgages are reduced.

We come to the conclusion, which to us is inevitable, that this court cannot consider this transaction ██ as a "sale" of assets in bulk. For this reason alone, we believe that the application should be disapproved. However, we have decided to consider the application on its merits as a plan of reorganization.

Stripped of all excess verbiage and reduced to its final analysis we consider this as a proposal to turn over the liquid assets accumulated by the superintendent in the liquidation of the company, together with certain mortgages and parcels of real estate, to a new company formed by a certain group of the stockholders of the liquidating company, together with certain other persons who have become interested in the proposal.

Upon a very careful consideration of all the factors involved, this court is unable to aprove this transaction ██ action as a plan of reorganization as it appears to us the plan, by whatever name it may be called, is not in the best interests of depositors. It appears that there are no other substantial creditors than depositors.

The first objection we have to the plan is that the proposed new company is not proposing to invest any new capital. We are of the opinion that any group desiring to purchase or otherwise deal with the assets of any liquidating bank or savings and loan company should be required to invest new capital. To approve a plan such as this would, in our opinion, establish a very bad precedent in respect to the assets of savings and loan companies and banks in the hands of the state for liquidation.

If this application should be approved why should not the stockholders of other financial institutions ask for approval of similar plans at the hands of this court. Followed to its logical conclusion it would mean that the superintendent of banks and the superintendent of Savings & Loan Companies would deliver assets consisting largely of cash and government bonds to preferred groups of stockholders without any consideration other than to carry on a new company with the assets of the old. We believe it a fair assumption that the officers and employees of said new company would expect to be paid out of the profits of such an operation, in which case the depositors would again be subjected to the speculative hazards of new corporate operations with their own money and at their own expense.

The proponents of the plan testified in open court that this plan would fall of its own weight unless the Federal Government insured the shares, and of course such a plan, if it did have the approval of the court would be contingent upon such approval by the Federal Government. It is not the province of this court to dictate the policies in any respect of the Federal Savings & Loan Insurance Corporation in insuring shares in saving and loan companies. It is, however, the duty of this court, under the law, to approve or disapprove an application for authority such as is here made. But in passing we venture the assertion that the Federal Government ought not to insure shares in a plan such as the one here proposed in the absence of investment of new capital by the purchasers in a substantial amount. However, it is unnecessary to consider this question, inasmuch as we consider the plan unsound on its merits and that therefore in the interests of depositors we must disapprove it by denying the application.

While the foregoing grounds would be sufficient we believe, to cause the court to withhold its approval, we find another significant fact which we believe requires the court to reject this proposal, and that is that the cash appraisal placed upon the real estate is in our opinion not the best price obtainable therefor.

We hold it to be the duty of the superintendent to secure the best price obtainable for assets in his hands for the purposes of liquidation. Since the filing of the application now under consideration this court has ordered competitive bidding on certain sales of real estate. These bids were offered before G. H. Martin, referee, appointed for that purpose. Upon such offerings bids were received on certain properties, thirteen in number, in an amount in excess of $10,000 over the offer contained in the application, a fact which demonstrates that the price at which it is proposed to capitalize these assets is not the best price obtainable. In fact in respect to one property the applicant at such competitive sale increased its own offer to an amount over $5,000 in excess of that contained in this application. We think we may properly take judicial notice of the fact in connection with an ex parte application such as this now under consideration that at the present time, at least, we have what may be termed a rising real estate market, and it is quite conceivable that with competitive bidding the superintendent in charge of liquidation may be able to realize higher prices than those contained in this offer with the consideration being cash rather than shares in a company to be formed.

In reaching the conclusions hereinabove set forth the court is not questioning the good faith, the motives or integrity of the members of the new company making this proposal. We assume that it is natural that some of this group, having been officers and directors in the old company should desire to attempt a reorganization thereof. We believe that it was a mistake to denominate this proposed plan of reorganization as a sale of assets when the bulk of the assets consists of cash and government bonds, and the consideration is nothing more than shares in a company to be formed. We believe that the court should not prefer any group no matter how worthy

and how well intentioned which does not as part of a plan of reorganization either purchase the fixed assets with money or contribute a substantial amount as new capital so that those depositors who desire to go along with the plan will not be penalized by the expense of operations arising out of an administration of assets which properly are their own property. So far as cash and bonds are concerned in the hands of the liquidator these funds should be used for one purpose only and that is for the purpose of paying a dividend to depositors. Such is the purpose of the state in conducting liquidation. The realization of assets having been accomplished, the depositors alone should be the beneficiaries.

It is not the province of this court to substitute its judgment for the judgment of the superintendent of building and loan associations with respect to a declaration of a dividend to depositors. This is an administrative function properly coming within the province and authority of the superintendent and the court should not interfere in the absence of abuse of discretion by the superintendnt. Finding no evidence of abuse of discretion by the superintendent, the court will not at this time make an order for a declaration of a dividend. However we express the opinion that with the disapproval of this plan the superintendent should seriously take under consideration the advisability of making immediate application to court for authority to declare a dividend to depositors.

Holding the views herein expressed, the application denominated "application for authority to sell assets in bulk" is disapproved. Decree accordingly.